NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CITIZENS BANK, N.A., <br><br> Plaintiff, <br><br> v. <br><br> NIRMAL MULYE, *et al.*, <br><br> Defendants. | Civil Action No. 23-545 (RK) (RLS) <br> (CONSOLIDATED) <br><br> **OPINION** |

**KIRSCH, District Judge**

      **THIS MATTER** comes before the Court upon Plaintiff Citizens Bank, N.A.'s ("Citizens") Motion for Summary Judgment. (ECF No. 64, the "Motion".) Defendant Nirmal Mulye[1] ("Mulye") filed an opposition to the Motion (ECF No. 68, the "Opposition"), and Citizens filed a reply (ECF No. 70). The Court has considered the parties' submissions and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Citizens's Motion for Summary Judgment is **GRANTED**.

**I.    BACKGROUND**

    **A.    THE PARTIES' BUSINESS DEALINGS**

      On December 31, 2020, Plaintiff Citizens Bank, N.A.'s predecessor, Investors Bank, extended three different credit facilities as part of a Loan Agreement[2] ("LA") to Nostrum

---

[1] Although Nostrum Pharmaceuticals, LLC is also a defendant in this Action through the Court's consolidation of this case with a related one, the present Motion for Summary Judgment is only directed against Defendant Nirmal Mulye.

[2] The Loan Agreement, dated December 31, 2020, was filed at ECF 64-4 starting on page 78.

Laboratories, Inc. ("NLI"), a generic pharmaceutical manufacturer. (P-SOF[3] ¶ 1; D-RSOF[4] ¶ 1.) In total, Citizens loaned NLI $22 million across a line-of-credit loan, a revolving-line-of-credit loan, and a term loan (collectively, the "Loans"). (*Id.*) These loans were backed by two guarantors: Nostrum Pharmaceuticals, LLC ("NPLLC") and Defendant Nirmal Mulye (collectively with NLI and NPLLC, the "Obligors"). Defendant Mulye, as CEO and Chairman of NLI's Board of Directors, signed a guaranty agreement, dated December 31, 2020 (ECF No. 64-4 at 249–59, the "Guaranty"). (P-SOF ¶ 2; D-RSOF ¶ 2.)

The ten-page Guaranty provided for certain "unconditional[] guarantees" and promises by Mulye. Most pertinent to this dispute, the Guaranty provides that Mulye "guarantees and promises to pay to [Citizens] . . . on demand . . . the principal sum of TWENTY TWO MILLION DOLLARS AND NO/100THS ($22,000,000.00) or so much thereof as may be due and owing" pursuant to the agreements underlying the Loans. (Guaranty § 1(a) (capitals in original).) The Guaranty also provides Mulye is liable for accrued and unpaid interest, expenses, fees, and costs pursuant to the same. (*See id.*) Importantly, the Guaranty also allows Citizens to pursue payment from Mulye "without first requiring performance by [NLI] or exhausting any or all security for the Loan." (*Id.* § 2; *see also id.* ("Guarantor further waives any requirement that [Citizens] demand or seek payment or performance by [NLI] or by any other party of the amounts owing or the covenants to be performed under the Documents as a condition precedent to bringing any action against [Mulye] upon this Guaranty.").)

On June 2, 2022, Citizens sent a notice of default (ECF No. 64-4 at 262–67) of the Loan Agreement to Obligors. (P-SOF ¶ 2; D-RSOF ¶ 2.) Following that notice, the parties engaged in

---

[3] Citizens's Statement of Uncontested Material Facts ("P-SOF") was filed at ECF 64-2.
[4] Mulye's Response to Citizens's Statement of Uncontested Material Facts ("D-RSOF") was filed at ECF 68-2.

2

negotiations and signed an agreement modifying the Loan Agreement on June 30, 2022. (ECF No. 64-4 at 278–83.) This agreement included, among other things, an acknowledgement of default and an "exten[sion] [of] the Resolving Credit Maturity Date to August 15, 2022." (*Id.* §§ 1, 5.) When August 15, 2022 came around, the loans were still not repaid. (P-SOF ¶ 12; D-RSOF ¶ 12.) According to Mulye, however, at this juncture, "the loans ha[d] not matured in light of [the] defenses" raised in this Action. (D-RSOF ¶ 12.)

Between August and October 2022, Obligors—through their general counsel and CFO, with outside counsel—negotiated a Forbearance Agreement with Citizens. (P-SOF ¶ 13; D-RSOF ¶ 13.)[5] The Forbearance Agreement was signed by both parties on October 31, 2022. (ECF No. 64-4 at 318–39, "FA".) Pursuant to the same, Citizens "agree[d] to forbear from exercising the rights and remedies available to it" relating to preexisting defaults, if and until there was a new default under the Forbearance Agreement or until December 2, 2022 (the expiration date of the Forbearance Agreement). (FA § 7.) Upon the cessation of the Forbearance Agreement, either through expiration or meeting one of its default criteria for termination, Citizens could, *inter alia*, demand "the entire outstanding Bank Indebtedness." (*Id.* at 19.) The Forbearance Agreement also included an acknowledgement of default and a clause indicating Citizens is not obligated to enter into any further forbearance agreements. (*Id.* §§ 3(a), 6, 21(b).) As part of the Forbearance Agreement, NLI was required to retain a consultant, "acceptable to [Citizens's] sole and absolute discretion," to evaluate NLI's financial condition and operations. (*Id.* § 12(a).) Lastly, the Forbearance Agreement contained a clause confirming that it does not "impair, reduce, or release

---

[5] The undisputed factual evidence indicates that the parties were engaging in significant negotiations of the Forbearance Agreement's terms. (P-SOF ¶¶ 13–17; D-RSOF ¶ 13–17.)

3

in any manner whatsoever any of the obligations of [Mulye] under the Guaranties." (*Id.* § 2.) In other words, Mulye is a guarantor to the Forbearance Agreement.

Then, on December 6, 2023, four days after the expiration of the Forbearance Agreement, Citizens sent the first of two notices of default pursuant to the same. (ECF No. 64-4 at 431–434, "DN1".) The first notice contained various demands of Obligors, as well as Citizens's position vis-à-vis Obligors' defaults.[6] Within the notice, Citizens emphasized its position that it "ha[d] no further obligation to forbear from the exercise of its rights and remedies under the Forbearance Agreement" and that "[n]o action or inaction on [Citizens's] part will operate as a forbearance of any kind." (DN1 at 2, 3.)

Then, a day prior to the filing of this Complaint, Citizens sent their second notice of default, dated January 30, 2023. (ECF No. 64-4 at 437–38, "DN2".) Here, Citizens restated its position with respect to the maturity of the loans and Obligors' obligation to repay them. (*Id.* at 1–2.) Citizens also provided notice of its plans to promptly pursue legal action against Mulye as guarantor of the Loans. (*Id.* at 2.) The notice also reminded Mulye that collection of payment by debiting NLI's account for regular interim payments on the Loans did not suspend Obligors' obligations nor act as any form of waiver. (*Id.*) Furthermore, Citizens emphasized that it "has no further obligation to forbear from the exercise of its rights and remedies under the Forbearance Agreement." (*Id.*; *see id.* ("No action or inaction on [Citizens's] part will operate as a forbearance of any kind or a waiver of any right . . . .").) On February 6, 2023, Citizens rejected, in writing, a "further six-month forbearance." (ECF No. 64-4 at 444.)

---

[6] According to Citizens, Obligors were in default, not only because of the nonpayment, but also based on their failures to: (i) submit a strategic business report; (ii) provide cash flow projections; (iii) provide financial statements and covenant compliance certificates; (iv) provide quarterly financials; (v) provide borrowing base certificates; and (vi) provide the agreement with NLI's logistics provider. (DN1 at 1–2.)

4

B.     **PENDING MOTION AGAINST DEFENDANT-GUARANTOR MULYE**

On January 30, 2023, Citizens filed suit seeking recovery of the Loans from Defendant Mulye as the guarantor of the Loans.[7] (*See* ECF No. 1.) After months of discovery, Citizens filed the subject Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 for repayment of the Loans, as well as applicable interest, fees, and costs. (*See* ECF No. 64.)

Mulye does not dispute the outstanding principal and interest on the Loans as of May 15, 2024, but instead puts forth a myriad of baseless affirmative defenses purporting to delay the due date of the Loans. (P-SOF ¶ 64; D-RSOF ¶ 64.) None of Mulye's defenses, even with their supporting facts, create a genuine issue of material fact sufficient to overcome the plain language of the agreements and correspondences between the parties. In fact, Citizens's clear, bona fide Motion for Summary Judgment stands in stark contrast to Mulye's defenses that appear as nothing more than an attempt to delay and obfuscate.

---

[7] For background on Citizens's action against corporate Obligors NLI and NPLLC: On September 28, 2023, Citizens filed a complaint against NLI and NPLLC seeking repayment of the outstanding indebtedness and appointment of a receiver for NLI. (Case No. 23-20765, ECF Nos. 1, 11.) While the subject Motion was pending, the Honorable Georgette Castner (U.S.D.J.) appointed a special fiscal agent to supervise NLI and report to the Court "on a regular basis as to the company's financial status as well as the value and disposition of its business assets." (*Citizens Bank, N.A. v. Nostrum Laboratories, Inc.*, No. 23-20765, ECF No. 96 at 1 (D.N.J. June 27, 2024)). Less than two months later, the undersigned granted Mulye's motion to consolidate the two pending cases bringing NLI and NPLLC into this action as additional defendants. (*See* ECF No. 71.)

On September 17, 2024, shortly after the Special Fiscal Agent Keith Balla ("Fiscal Agent") produced his first report on NLI's financial status, upon request by Citizens, the Court conducted an emergency hearing regarding the Fiscal Agent's report and Citizens's renewed request for the appointment of a receiver for NLI. (ECF No. 76.) Pursuant to that request, the Court held an evidentiary hearing on September 24, 2024, in which the parties examined and cross-examined the Fiscal Agent. (ECF Nos. 80, 81.) In considering the Fiscal Agent's report, the examination of the Fiscal Agent, and the Declaration of James L. Grainer, CFO of NLI (ECF No. 78-1), the Court determined that it would "grant[] the application" for the appointment of a receiver, with a written opinion to follow. (ECF No. 81 at 108:16.) Shortly after the evidentiary hearing, before the Court officially appointed a receiver, NLI filed a petition for Chapter 11 bankruptcy. (*See* ECF No. 82.) Therefore, in light of the bankruptcy proceedings and the automatic stay pursuant to the same, NLI has been terminated from this Action while the bankruptcy stay is in effect. (*See* ECF No. 85.) Defendant Mulye is not subject to the bankruptcy court's automatic stay and thus this matter proceeds against him.

In summary, Mulye argues his affirmative defenses thwart Citizens's collection of the outstanding amount on the Loans. (D-RSOF ¶ 64; *see also* Opposition at 1–2.) Mulye's primary argument is that the parties ratified an extended forbearance agreement that operates to defer the due date on the Loans, apparently, indefinitely. (*Id.* at 11–17.) In addition to that theory, Mulye also puts forth defenses of misrepresentation, fraud, estoppel, mutual breach, election of remedies, unclean hands, and economic duress. (*See generally id.*)

In fact, each of the litany of affirmative defenses are, individually and in the aggregate, interrelated legal "rabbit holes" designed to confuse and thwart the clear, unambiguous, uncontroverted fact: Citizens loaned NLI some $22 million, of which more than $17 million remains, and Mulye as guarantor must pay it back. The defenses are entirely without merit.[8]

## II. LEGAL STANDARD

### A. FEDERAL RULE OF CIVIL PROCEDURE 56

Federal Rule of Civil Procedure 56 provides that the Court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must "view[] the facts in the light most favorable to the party against whom summary judgment was entered." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). The party moving for summary judgment has the initial burden of establishing its right to summary judgment. *See Celotex Corp.*, 477 U.S. at 323. Once the movant meets its threshold burden under Rule 56, the nonmoving party must present evidence to establish a *genuine* issue as to a *material* fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

---

[8] The defense strategy is aptly encapsulated as "throw things against the wall and see what sticks." Regrettably, the assertion of patently invalid defenses here might understandably be leveled by a *pro se* litigant, untrained in the law, but is not something this Court expects from legal counsel.

A fact is material if it might affect the outcome of the suit under the governing law. *Canada v. Samuel Grossi & Sons, Inc.*, 49 F.4th 340, 345 (3d Cir. 2022) (citation omitted). Whether a dispute of material fact is genuine turns on whether "a reasonable jury could return a verdict for the nonmoving party." *Spivack v. City of Philadelphia*, 109 F.4th 158, 165–66 (3d Cir. 2024) (citation omitted).

In determining the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; rather, all reasonable inferences and doubts should be resolved in favor of the nonmoving party. *Melrose, Inc. v. City of Pittsburgh*, 613 F.3d 380, 387 (3d Cir. 2010). But a mere "scintilla of evidence," without more, will not give rise to a genuine dispute for trial. *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts"). "In the face of a properly supported summary judgment motion, the nonmovant's burden is rigorous." *Roofer's Pension Fund v. Papa*, 687 F. Supp. 3d 604, 616 (D.N.J. 2023). The nonmoving party must point to "concrete evidence in the record"—mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment. *Orsatti v. New Jersey State Police*, 71 F.3d 480, 484 (3d Cir. 1995); *accord Jackson v. Danberg*, 594 F.3d 210, 227 (3d Cir. 2010) ("[S]peculation and conjecture may not defeat a motion for summary judgment." (citation omitted)). Such evidence must be admissible at trial although it need not be in admissible form at the time of summary judgment. *FOP v. City of Camden*, 842 F.3d 231, 238 (3d Cir. 2016). Moreover, a court need not adopt the version of facts asserted by the nonmoving party if those facts are "utterly discredited by the record that no reasonable jury" could believe them. *Scott v. Harris*, 550 U.S. 372, 380 (2007). In such cases, summary judgment is still

appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

### III. DISCUSSION

The parties do not dispute that they entered into a Loan Agreement and a Forbearance Agreement, and as of May 15, 2024, "the outstanding principal and interest owed for the Loans is: $17,265,467.07 with interest accruing at a rate of 3.6% per annum, plus additional PIK interest accruing at a rate of 0.50% per annum."[9] (D-RSOF ¶¶ 1, 18, 64). Moreover, they do not dispute that Mulye guaranteed repayment of the Loans under the Guaranty. (D-RSOF ¶ 2).

Consequently, Citizens has met their initial burden to show there are undisputed facts indicating money is due, and in an amount certain, plus interest. The burden shifts to Mulye to assert disputed facts that create a genuine issue of material fact to defeat summary judgment. In an attempt to do so, Mulye puts forth seven groups of defenses.[10]

#### A. RATIFICATION

Mulye's principal defense is that the "entire lawsuit is barred by the fact that the parties are operating under an extended [f]orbearance [a]greement." (Opposition at 1.) In other words, Mulye argues Citizens "ratified" an extension of the Forbearance Agreement that "would last as long as NLI maintained its financial stability and timely made scheduled interest and installment payments, and pending NLI's efforts to obtain financing and pursue new product launches and cost-cutting measures." (*Id.* at 3, 16.) According to Mulye, Citizens is "prohibited from exercising its rights and remedies," i.e., bring this suit, during the purported extension of the agreement. (*Id.*

---

[9] PIK interest is calculated pursuant to § 9 of the Forbearance Agreement.

[10] Mulye's seven groups of affirmative defenses are (i) ratification of an extended forbearance agreement; (ii) misrepresentation, fraud and estoppel; (iii) Citizens's breaches excuse Mulye's breaches; (iv) remedies are barred under the doctrine of election of remedies; (v) claims and remedies are barred under the doctrine of unclean hands; (vi) claims are barred under the theory of economic duress; and (vii) the claims are barred because Citizens did not first seek recovery from NLI.

8

at 11.) Mulye makes various far-fetched arguments and alleges certain facts in an effort to evince an extended forbearance agreement. However, before discussing Mulye's theories of ratification, the Court begins with the language of the Forbearance Agreement and default notices.

1. **Language of the Forbearance Agreement**

On October 31, 2022, NLI (principal borrower), NPLLC (corporate guarantor), Defendant Mulye (individual guarantor), and Plaintiff Citizens Bank (lender) entered into the Forbearance Agreement. (*See generally* FA.) The language of the Agreement is clear and unambiguous with respect to certain facts material to the subject Motion: (i) expiration date; (ii) parties' duties on or before the expiration date; (iii) whether future forbearances will occur; (iv) how the agreement can be modified; and (v) how other contemporaneous agreements or representations should be considered. Section 7 of the Agreement states:

> Bank hereby agrees to forbear from exercising the rights and remedies available to it as a result of the Existing Defaults, until the earlier of (a) the occurrence of any Default or Event of Default (other than the Existing Defaults) under this Agreement or the other Loan Documents, and (b) *December 2, 2022* (such earlier date being the "*Forbearance Expiration Date*").

(FA § 7 (emphasis added); *see also id.* § 11(c).) Under this plain language, the Agreement would terminate at the latest on December 2, 2022, if not triggered by a specifically enumerated event under the Agreement. In another section titled "Future Forbearance," the Agreement makes clear that "[n]othing contained herein shall be deemed to obligate Bank to enter into any other forbearance agreements or to waive any Events of Default." (*Id.* § 21(b).) In other words, the plain language of the Agreement forecloses any argument that Citizens is obligated to further forbear. With respect to modification of its terms, the Agreement states, "No modification of this Agreement or any of the Forbearance Documents shall be binding or enforceable *unless in writing and signed by or on behalf of the party against whom enforcement is sought.*" (*Id.* § 32 (emphasis added).) This means the Forbearance Agreement provides that it cannot be modified orally or

9

otherwise without a signed writing. Finally, for the avoidance of doubt, the Agreement provides that it "constitutes the entire agreement among the parties . . . and supersedes all prior or contemporaneous oral and/or written agreements and representations not contained herein." (*Id.* § 38.) Mulye does not dispute that Obligors entered into the Forbearance Agreement containing those provisions.

### 2. Default Notices

Following the expiration of the Forbearance Agreement, Citizens issued two default notices to NLI on December 6, 2022 and January 30, 2023. Mulye does not deny the existence or receipt of these notices but disputes their effect. (D-RSOF ¶¶ 27, 30.)

The December 6, 2022 default notice enumerated six Events of Default as well as the failure to repay the entire amount of the indebtedness by the Forbearance's Expiration Date. (*See* DN1 at 1–2.) The notice also included a demand for various items, including documents or reports "by no later than December 15, 2022." (*Id.* at 2.) As provided in the Forbearance Agreement, the notice reiterated that the "Bank has no further obligation to forbear from the exercise of its rights and remedies under the Forbearance Agreement, the Loan Documents at law or in equity." (*Id.* at 2.) Moreover, the notice denied the existence of any "offers outstanding . . . [or] any oral agreements . . . concerning the obligations . . . [under] the Forbearance Agreement or Loan Documents" and reaffirmed that "[n]o action or inaction on Bank's part will operate as a forbearance of any kind." (*Id.*)

The second default notice on January 30, 2022 reiterated Citizens's position that "all of the Loans have matured, and the Forbearance Agreement has expired, and, therefore, the entire Bank Indebtedness is presently due and owning." (DN2 at 1.) The notice served to let NLI and Mulye know that Citizens's monthly debits from NLI's account will not serve as a waiver of any kind with respect to any of the agreements or "change the fact that the full amount of the Bank

Indebtedness is due and payable in full." (*Id.* at 1–2.) For further assurances, Citizens noted it "has no further obligation to forbear from the exercise of its rights and remedies under the Forbearance Agreement, the Loan Documents at law or in equity" and "[n]o action or inaction on Bank's part will operate as a forbearance of any kind or waiver of any right . . . ." (*Id.* at 2.) The Complaint in this case was filed the day after this notice was sent.

### 3.    Mulye's Arguments for Ratification

The Court now turns to Ratification under New Jersey law.[11] Although arising in the context of a Forbearance Agreement, the meaning of ratification here "is not dissimilar from its general meaning in the law of agency." *Thermo Contracting Corp. v. Bank of New Jersey*, 354 A.2d 291, 295 (N.J. 1976). "Ratification is the affirmance by a person of a prior act which did not bind him but which was done, or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally done by him." *Villanueva v. Brown*, 103 F.3d 1128, 1138 (3d Cir. 1997) (quoting *Thermo Contracting Corp.*, 354 A.2d at 296); *see also Highland Cap. Corp. v. Pasto*, No. 19-14282, 2022 WL 6741730, at *8 (D.N.J. Oct. 11, 2022). Without "an intent to ratify" and "full knowledge of all material facts," ratification cannot be established. *Renex NY Corp. v. Supply Depot LLC*, No. 23-00489, 2023 WL 4580965, at *4 (D.N.J. July 18, 2023) (citation omitted). But intent need not be express, "intent may be inferred from the failure to repudiate an unauthorized act." *Thermo Contracting Corp.*, 354 A.2d at 296.

While Mulye makes various contrived arguments in an effort to convince the Court that the parties are operating under an extension of the Forbearance Agreement, he points to no evidence, written or otherwise, indicating one was ever ratified. In fact, Mulye's first argument is that the Court should ignore the "boilerplate" provisions in the Agreement in favor of the "course

---

[11] The parties do not dispute that New Jersey law governs the suit.

11

of conduct between the parties." (*See* Opposition at 11.) Supporting this proposition, he puts forth cases applying inapposite Pennsylvania, Missouri, and Georgia law. (*Id.* at 12.) Although cases cited from other jurisdictions may be helpful and instructive under the right circumstances, the Court finds it more appropriate to look to New Jersey contract law here.

A no-oral-modification clause can be overcome in certain, albeit unusual, circumstances. *See, e.g., McGrath v. Poppleton*, 550 F. Supp. 2d 564, 571 (D.N.J. 2008). However, for a court to find that a subsequent oral agreement exists, it must be established by clear and convincing evidence. *905 Mountain Ave., LLC v. Hillside Seafood House Inc.*, No. A-0921-22, 2024 WL 1046852, at *4–5 (N.J. Super. Ct. App. Div. Mar. 11, 2024); *see also Elliott & Frantz, Inc. v. Ingersoll-Rand Co.*, 457 F.3d 312, 322 (3d Cir. 2006) ("[I]ntention to modify [must be] mutual and clear." (quoting *County of Morris v. Fauver*, 707 A.2d 958, 967 (N.J. 1998) (internal quotation omitted))). To that same point, it is not a court's job to make a "different or a better contract than the parties themselves have seen fit to enter into." *E. Brunswick Sewerage Auth. v. E. Mill Assocs., Inc.*, 838 A.2d 494, 497 (N.J. Super. Ct. App. Div. 2004) (citation omitted). Thus, the Court must give the terms of the agreement "their plain and ordinary meaning." *GMAC Mortg., LLC v. Willoughby*, 165 A.3d 787, 794 (N.J. 2017) (citation omitted).

Mulye posits that NLI was given *implicit* assurances from Citizens that the Forbearance Agreement would be extended "as long as NLI maintained its financial stability and timely made scheduled interest and installment payments, and pending NLI's efforts to obtain financing and pursue new product launches and cost-cutting measures." (D-SDF ¶ 23; P-RSDF ¶ 23; Opposition at 3, 16.) But there is a complete lack of evidence in the record supporting this assertion beyond Mulye's dubious self-serving citations to his declaration, (ECF 69-13), and the declaration of NLI's CFO, (ECF 69-6). (*See* D-SDF ¶¶ 23, 60.) In fact, the record evidence reveals the contrary

12

to be true. NLI's CFO attested—and it is undisputed—that Citizens's agent "informed [him] that she would review and *consider* granting the extension," and "[he] was assured that it was *possible* that [Nostrum Laboratories] *might* qualify for an extension of the Forbearance Agreement." (ECF No 69-6 ¶ 5 (emphasis added).) Moreover, the Forbearance Agreement and subsequent notices from Citizens make clear that it had no intention of entering into any extended forbearance agreement.[12] (*See generally* FA; *see also* DN1; *see also* DN2.)

Mulye's position is that the Forbearance Agreement extends potentially for posterity, with literally no end. At the Evidentiary Hearing, held on September 24, 2024, ("Evid. Hr'g") when discussing the supposed end date to the claimed extended forbearance agreement the Court inquired, incredulously:

> THE COURT: By the way, when does that forbearance agreement end?
> * * *
> THE COURT: Forever?
> * * *
> MR. ASHER: It could be, it could be.

(Evid. Hr'g Tr. at 89:7–15.)

Mulye's second argument is that Citizens ratified an extended forbearance agreement because they "continued to demand and accept NLI's performance under the Forbearance

---

[12] The parties also quibble over the implications of an unclear end date in the purported extended forbearance agreement. It is true that a contract can be deemed unenforceable for vagueness. *See, e.g., Hertz Corp. v. Frissora*, No. 19-08927, 2023 WL 4173031, at *9 (D.N.J. June 26, 2023), *appeal dismissed*, No. 23-2345, 2023 WL 9423933 (3d Cir. Aug. 2, 2023). And even though an expiration date is a critical term, it is not always *sine qua non* of a valid agreement because it can be filled through gap fillers. Here, the lack of due date would mean, at a minimum, the loan was payable on Citizens's demand. *See, e.g., Wallis v. Stoyer*, No. 16-1547, 2018 WL 2018057, at *3 (D.N.J. May 1, 2018). There are no facts here, disputed or otherwise, that evidence there was possibly an agreement to forbear indefinitely. Moreover, the Court gives no weight to Mulye's reliance on what "NLI's representatives understood from its communications with [Citizens] *pre-Forbearance Agreement*," (Opposition at 16 (emphasis added)) where they are inconsistent with the written Forbearance Agreement. *MacWilliams v. BP Prod. N. Am. Inc.*, No. 09-1844, 2010 WL 4860629, at *6 (D.N.J. Nov. 23, 2010) ("New Jersey's parol evidence rule prohibits Plaintiff from rewriting the terms of the parties' agreement by introducing evidence of prior oral discussions that directly contradict the agreements' terms.")

13

Agreement, [following its expiration,] including that NLI make scheduled installment payments." (Opposition at 11.) Mulye further argues, without foundation, that Citizens's "conduct indicates [Citizens] was seeking payments under a continued forbearance arrangement – not that it was seeking to recover its loan monies upon an alleged default." (*Id.* at 14.) To support this argument, Mulye cites a litany of cases for the proposition that "a party ratifies a contract by accepting benefits flowing from it." (*Id.* at 13.)

The language of the Forbearance Agreement and the default notices are fatal for Mulye. The January 30 default notice stated explicitly that:

> [Citizens] acceptance of such payments is not and shall not be construed to (i) change the fact that the full amount of the Bank Indebtedness is due and payable in full, (ii) be a waiver or extension of the maturity date of the Loans, (iii) be an agreement by the Bank to accept monthly payments in lieu of payment in full, or (iv) *be a waiver of any past, present or future violation of the Forbearance Documents, Defaults or Event of Default under the Forbearance Agreement, Loan Agreement or any of the other Loan Documents.*

(DN2 at 1 (emphasis added).)

No additional discussion is warranted.

### B. MISREPRESENTATION / FRAUDULENT INDUCEMENT

Although not encompassing completely distinct assertions from the prior defense, Mulye also raises defenses of misrepresentation and fraud. Mulye makes two arguments both relating to the Forbearance Agreement. Mulye first argues that prior to signing the Forbearance Agreement, NLI was "implicitly assured" that Citizens "would review and consider granting the extension prior to the expiration date set forth in the Forbearance Agreement" and therefore, Citizens is estopped from reneging on that assurance. (Opposition at 18.) Second, Mulye alleges he was fraudulently induced into a consulting relationship (per the Forbearance Agreement) with Dalto Consulting, who is purportedly "loyal to [Citizens]." (*Id.* at 19–20.)

When a contract is signed, it is a "conclusive presumption" that the signatory "read, understood and assented to its terms." *MZM Constr. Co., Inc. v. New Jersey Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 403 (3d Cir. 2020) (citation omitted). Indeed, one cannot void a contract by claiming they did not comprehend its contents or legal effect. *Id.* Moreover, "[i]t is manifestly unreasonable for a party to rely on prior oral statements when the express language of the contract is written explicitly nullifying any previous agreements, oral or written." *18W Holdings, Inc. v. Sing for Serv., LLC*, No. 20-15007, 2023 WL 2424188, at *4 (D.N.J. Mar. 9, 2023). However, when assent to a contract is induced "by a material misrepresentation about facts external to that document," a contract can be unenforceable. *MZM Constr. Co., Inc*, 974 F.3d at 403. Even "an agreement's integration clause will not bar claims that are extrinsic to the subject matter addressed in the agreement" when the claims are premised on fraud in the inducement. *18W Holdings, Inc.*, 2023 WL 2424188, at *4.

### 1. Possibility of Extensions

Mulye's contention that Citizens made misrepresentations about *possible* extensions of the Forbearance Agreement, is refuted, in more ways than one, chiefly through the text of the Agreement. The subject matter of the alleged misrepresentation is covered within the Agreement. The Agreement says, among other things: "Nothing contained herein shall be deemed to obligate [Citizens] to enter into any other forbearance agreements or to waive any Events of Default." (FA ¶ 21(b).) This clause specifically addresses the possibility of further forbearance and thus forecloses any fraudulent inducement defenses premised on pre-Forbearance Agreement representations about an extended forbearance agreement. Moreover, this contract was negotiated at arm's-length with sophisticated parties represented by counsel.

Moreover, evidence that Obligors received any assurances are nonexistent. Rather than point to any communication between the parties, Mulye, once again, cites to his declaration, as

15

well as the declaration of NLI's CFO for purported implicit assurances. (D-SDF ¶¶ 24–29). Moreover, as already discussed with respect to the ratification defense, Mulye's belief that Obligors "*might qualify* for an extension of the Forbearance Agreement" cannot constitute fraud or misrepresentation. *See Luscko v. S. Container Corp.*, 408 F. App'x 631, 634 (3d Cir. 2010) ("As a general rule, fraudulent inducement cannot be predicated upon representations which involve things to be done in the future." (citing *Anderson v. Modica*, 73 A.2d 49, 53 (N.J. 1950)); *see also Travelodge Hotels, Inc. v. Durga, LLC*, No. 15-8412, 2024 WL 4345051, at *7 (D.N.J. Sept. 30, 2024) (finding that even statements by a party involving words such as "'will,' 'plan' or 'expect'" rather than words indicating a possible future event such as "might" are still insufficient for a fraud claim). Mulye argues Citizens never "informed NLI that such an extension would not be possible." (*See* D-SDF ¶ 29.) The speciousness of this contrived "Hail Mary," like the others, fails.

### 2. Consulting Relationship with Dalto Consulting

Arguments that Citizens fraudulently induced NLI into a relationship with Dalto Consulting ("Dalto") are equally unavailing. Mulye claims that, unbeknownst to Obligors, they entered into a consulting relationship, as required by the Forbearance Agreement, with a firm "loyal" to Citizens. (*See* ECF No. 68 at 18–19.) To support his position, Mulye points to an email between Citizens and Dalto where Citizens instructs Dalto to "not simply regurgitate information provided by the company" because Citizens is "wary of the accuracy of [NLI']s info." (D-SDF ¶ 22 (citing ECF No. 69-12 at 2).) This is nothing more than reasonable attempts by Citizens to ensure it is getting accurate information regarding NLI according to section 12(a) of the Forbearance Agreement. Mulye's self-serving contortion of the unrefuted evidence does not create a genuine issue of material fact.

### C. Economic Duress

Mulye also asserts a defense under the doctrine of economic duress. This defense, which purports to "render[] any waivers in the Forbearance Agreement unenforceable," (Opposition at 24), fails as well. Economic duress occurs when the party alleging it is "the victim of a wrongful or unlawful act or threat," which "deprives the victim of his unfettered will." *Cont'l Bank of Pennsylvania v. Barclay Riding Acad., Inc.*, 459 A.2d 1163, 1175 (N.J. 1983) (quoting 13 SAMUEL WILLISTON, A TREATISE ON THE LAW OF CONTRACTS § 1617 (3d ed. 1970)). While "wrongfulness of the pressure exerted" is the "decisive factor," "inadequate consideration [is also] a cornerstone of economic duress." *Levy Grp., Inc. v. Land, Air, Sea & Rail Logistics, LLC*, No. 21-1381, 2022 WL 1101577, at *3 (3d Cir. Apr. 13, 2022) (citing *Cont'l Bank of Penn.*, 459 A.2d at 1175). Mulye's proffered, but specious, unsupported claim that he was somehow "improperly lured" and there was "inadequate consideration" does not sufficiently show that Citizens performed a "wrongful or unlawful" act that deprived Mulye of its "unfettered will." There is no possible defense here of economic duress.

### D. Unclean Hands

Mulye also asserts that Citizens's "unclean hands" precludes both the Forbearance Agreement and the extended forbearance agreement from being enforced against him. (*Id.* at 23, 24.) Notwithstanding that this defense is also premised, in part, on the existence of an extended forbearance agreement, it fails because an unclean hands defense only bars equitable relief. *See, e.g., Datasphere, Inc. v. Computer Horizons Corp.*, No. 05-2717, 2009 WL 2132431, at *9 (D.N.J. July 13, 2009) ("Courts widely agree that equitable affirmative defenses cannot defeat a claim at law for breach of contract."); *see also McAdam v. Dean Witter Reynolds, Inc.*, 896 F.2d 750, 756 n. 10 (3d Cir. 1990) (finding doctrine of unclean hands not applicable where plaintiff only sought

17

damages) (citations omitted). Since the claim here is for a legal right, i.e., a breach of contract claim for money damages, the unclean hands defense fails as a matter of law.

### E. ELECTION OF REMEDIES

Mulye further argues that Citizens must first seek recovery from NLI (principal borrower) before attempting to collect from Mulye (individual guarantor). (Opposition at 26.) Mulye cites a 1988 bankruptcy case to argue that "a guarantor has an equitable right to compel a creditor to seek satisfaction first from the principal debtor." (Opposition at 25 (citing *In re Cardell*, 88 B.R. 627 (Bankr. D.N.J. 1988).) But that does not trump the plain language of a guaranty agreement. *See Borden v. Cadles of Grassy Meadows II, LLC*, 992 A.2d 4, 18 (N.J. Super. Ct. App. Div. 2010) (finding that under New Jersey law, "a continuing, absolute and unconditional guaranty of a note may be enforced directly against the guarantor without prior recourse to foreclosure on the collateral or even against the principal debtor" (citation omitted)).

Here, the plain language of the Guaranty indicates that Citizens is allowed to seek recovery directly from Mulye without first seeking payment from NLI. (*See* Guaranty.) Section 2 of the Guaranty provides "the Lender may . . . without first requiring performance by Borrower or exhausting any or all security for the Loan, bring any action at law or in equity or both to compel Guarantor to perform its obligations." (*Id.* ¶ 2) Moreover, "Guarantor further waives any requirement that the Lender demand or seek payment or performance by Borrower or by any other party of the amounts owing or the covenants to be performed under the Documents as a condition precedent to bringing any action against Guarantor upon this Guaranty." (*Id.*) These provisions are dispositive and thus this defense also fails. Again, no additional discussion is warranted.

For the forgoing reasons, none of Mulye's defenses create a genuine issue of material fact to defeat summary judgment.

## CONCLUSION

For the reasons set forth above, the Motion for Summary Judgment is hereby **GRANTED**. An appropriate Order accompanies this Opinion. As the Court reserves its ruling as to the exact amount owed, a Judgment Order will follow this determination.

_____
**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

Dated: November 20, 2024